[Crim. No. 352.   Third Appellate District.—April 29, 1916.]

## In the Matter of the Application of C. F. PRECIADO for a Writ of Habeas Corpus.

CRIMINAL LAW—CONVICTION OF FELONY—ADMISSION TO BAIL PENDING APPEAL—DISCRETION.—Admission to bail, pending an appeal from a judgment of conviction of a felony, is a matter resting wholly in the discretion of the trial court, and the exercise of such discretion should not be disturbed or ignored except in an instance of manifest abuse.

ID.—LIBERATION OF DEFENDANT—WHEN PROPER.—Such discretion should not be exercised in favor of the liberation of the defendant except in instances where circumstances of an extraordinary character have intervened since conviction, which makes it obviously proper.

ID.—REFUSAL OF ADMISSION TO BAIL—ABUSE OF DISCRETION—ILL HEALTH OF DEFENDANT—SUFFERER FROM EPILEPSY.—It is an abuse of discretion to refuse the application of a defendant for admission to bail pending an appeal from a judgment of conviction of embezzlement, where it is shown that he was suffering from epilepsy of the *grand mal* type.

APPLICATION for admission to bail pending an appeal from the Superior Court of Madera County from a judg-

ment of conviction of embezzlement. C. O. Busick, Judge presiding.

The facts are stated in the opinion of the court.

L. D. Windrem, R. R. Fowler, H. J. Maxim, and Joseph Barcroft, for Petitioner.

U. S. Webb, Attorney-General, J. Charles Jones, Deputy Attorney-General, and Stanley Murray, District Attorney, for Respondent.

HART, J.—The petitioner was convicted in the superior court of Madera County, on the thirteenth day of March, 1916, of the crime of embezzling public funds, he being at the time of the alleged commission of said offense tax collector of said county. Upon his conviction by the jury, he was remanded to the custody of the sheriff of Madera County and by that official incarcerated in the county jail of said county, wherein he is now and ever since his conviction has been confined.

He has taken an appeal to the appellate court from the judgment of conviction, and has inaugurated this proceeding for the purpose of obtaining an order admitting him to bail pending the determination of said appeal.

The writ was made returnable before and heard by two of the justices of this court.

The petition alleges that, upon the conviction of the petitioner, and before his commitment, "application was made to the Hon. C. O. Busick, trial judge, in behalf of your petitioner for bail, pending appeal to be taken, which said motion was denied upon the ground that no adequate showing had been made for admission to bail; that your petitioner, upon the date set for his sentence, to wit, on Saturday, the 18th day of March, 1916, gave due and legal notice of appeal from the judgment of said court, which said appeal is now pending and in process of perfection, and at the same time and place, another motion was made in behalf of your petitioner for admission to bail pending his said appeal, which said motion was by said trial judge denied."

The petitioner is, according to the petition and the proofs, a chronic epileptic, having suffered from epilepsy for a period

of over eight years, and being "subject to frequent violent attacks of the 'grand mal' form of said malady." It is alleged in the petition that the cell in which he is confined "is of metal, about four by seven feet in size, fitted with a hammock, an iron washstand and an iron toilet bowl; that the floor, ceiling and walls of said cell are of steel; that the corridor upon which said cell opens is built of steel in its entirety; that since the date of your petitioner's confinement, he has been seized with grand mal attacks six times." It is further alleged: "That since Tuesday, April 11th, 1916, your petitioner has been confined in his cell alone during the daytime, a brother remaining with him at night, by and with the consent of the sheriff; that up to the present time, there has been some other person present during seizures, but as there are no other person or persons confined with your petitioner at this time, your petitioner fears that subsequent seizures will result in grievous injury, and perhaps death, and that his continued confinement in his present quarters is fraught with serious impending danger to his life, and that his continued confinement pending his appeal is likely to result fatally."

The application for bail to the court below was based upon the uncontroverted affidavits filed by the petitioner. Some of these affidavits were by physicians who therein stated that the petitioner is and has been for a number of years subject to epileptic fits, and that the attacks were of the character known in medical science as the *grand mal* type, which is pronounced by experts in that science to be the most serious form in which that malady manifests itself. Other affidavits are by persons who personally witnessed and described a number of these attacks suffered by the petitioner since his incarceration in jail.

The same affidavits have been filed with the petition before us. In addition to these, there have been filed here, in behalf of the petitioner, the affidavits of J. J. Cramer, night jailer at the Madera County jail, and Henry and W. B. Preciado, brothers of the petitioner, and, by way of a countershowing by the respondent, the affidavits of Drs. T. M. Hayden and C. P. H. Kjaerbye, and those of the district attorney of Madera County and J. F. Lewis, sheriff of said county.

It is conceded that the petitioner is an epileptic, that he suffers from intermittent attacks of that disease, and that

the paroxysms are very severe, or of the most serious form of that malady. It is stated in the affidavits upon which the application was made for bail before the court below and which affidavits, as seen, are among those upon which this application is made, that the petitioner has suffered six epileptic attacks since his confinement. The statement that he has had a number of attacks since his confinement was not denied before the trial judge, nor is it controverted here. On the contrary, it is conceded to be true.

The affidavits used in the application to the trial judge for bail disclosed, as here, that W. B. Preciado, a brother of petitioner, found it necessary, because of the condition of petitioner as alleged and described, that the latter should have some one with him in the county jail at all times to prevent injury resulting to him when seized with an epileptic fit, and that, by permission of the sheriff, he (W. B. Preciado) has remained with the petitioner during the night-time since the latter's confinement.

The affidavits of the physicians filed in behalf of the petitioner declare that it is the professional opinion of each of the affiants that "confinement in jail is greatly injurious to his (petitioner's) health and endangers his life."

The additional proof presented on this hearing in behalf of the petitioner shows that the latter has suffered two epileptic attacks since the date of the application to the trial judge for an order admitting him to bail—one occurring on April 14th and the other on April 16th.

The two doctors whose affidavits were filed here by the respondent each states that he made a professional examination of the petitioner on the twenty-first day of April, 1916; that, from such examination, he found petitioner to be "in good normal condition"; and "that his body was well nourished, his skin was clear, his urine normal, his eyes bright and temperature normal; that his pulse was 65, his lungs and heart normal, his tendon reflex normal, and that according to the statement of the said C. F. Preciado (petitioner) his appetite was good; . . . that he was in a cheerful state of mind, talked intelligently about his case; that he suffered, or seemed to suffer, no more from his confinement than the ordinary average prisoner suffers or seems to suffer from confinement." These affiants further state that they have been informed by the sheriff, his deputies, and the petitioner him-

self that the latter, since his incarceration, has had but four attacks or fits; that he has been confined in jail for five weeks and "that this number of attacks during this period of time is a decrease in number from the number he has suffered according to the testimony introduced at the trial of the said C. F. Preciado during the period of eight or nine years immediately before his confinement in the county jail," etc., and that "the said C. F. Preciado, due to his incarceration in the said jail, is not in imminent danger of death."

The sheriff, in his affidavit, deposes that the petitioner "during the whole of the period during which he has been confined, has eaten heartily, slept well, appeared to be in jovial spirits and has complained of no sickness or pain; that affiant has seen petitioner in one convulsion or spasm since his confinement which lasted from three to four minutes; that affiant has been informed by his deputies that petitioner has had but three other spasms or convulsions during the period of his confinement, the same in each instance lasting no longer than four minutes, and that he comes out of these attacks without any noticeable effects upon his health or general condition." The sheriff further deposes: "That a deputy sheriff has his desk within about eighteen feet of his cell door; that at least every half hour during each and every day a deputy sheriff is within sight of the said C. F. Preciado; that by reason of the close contact of deputies in the office with the said C. F. Preciado's cell it would be impossible for any commotion to occur therein without someone observing same and going immediately to his rescue; that during the night-time affiant has permitted the brother or some other member of the said C. F. Preciado's family to occupy a cot placed directly in front of the open cell door of the said C. F. Preciado; that affiant has extended this privilege not by reason of any fear of injury to the said C. F. Preciado but out of courtesy to the defendant and to the members of his family. That at night a deputy sheriff also sleeps in a room off of the corridor and within twenty feet of the cell of the said C. F. Preciado; that affiant does not believe that his incarceration at the jail at this time affects the health or physical condition of the said C. F. Preciado in any wise, or that the said C. F. Preciado is in any danger whatsoever by reason of his incarceration aforesaid."

The district attorney deposes that the trial of the petitioner covered a period of about three weeks, during which time (so that official declares upon information and belief) the petitioner suffered no epileptic attack; that (upon information and belief) the petitioner has had only four attacks during his confinement in jail, and likewise states that said attacks have not been of a severe character and have lasted not to exceed in any case four minutes, etc.

The foregoing embraces a statement in substance of the showing made both in the court below and here.

By the terms of section 1272 of the Penal Code, whether a person after having been convicted of a felony, not involving the death penalty, may be admitted to bail, is a matter resting wholly in the discretion of the trial court before which the conviction was obtained. Under section 1291 of said code, the authority to admit to bail, in cases in which the accused may be admitted to bail on appeal, is vested in any magistrate having the power to issue the writ of *habeas corpus*, or by the magistrate before whom the trial was had.

The settled rule in this state as to the matter of the application for bail after conviction and pending the determination of an appeal is that such application should be made in the first instance before the judge who tried the cause. (*People* v. *January,* 70 Cal. 34, [11 Pac. 326]; *People* v. *Perdue,* 48 Cal. 552; *Ex parte Turner,* 112 Cal. 629, [45 Pac. 471]; *Ex parte Hatch,* 15 Cal. App. 186, [114 Pac. 410]; *People* v. *Cornell,* 28 Cal. App. 654, [153 Pac. 726].) It has accordingly been declared that "the discretion in cases of this kind is vested primarily in the court that tried the case, or the judge thereof, and the determination of the latter should not be disturbed or ignored except in an instance of manifest abuse." (*Ex parte Turner,* 112 Cal. 629, [45 Pac. 471]; *People* v. *Perdue,* 48 Cal. 552; *People* v. *January,* 70 Cal. 34, [11 Pac. 326].)

Those cases further say that, since bail after conviction is purely a matter of judicial discretion, such discretion should not be exercised in favor of the liberation of a defendant pending appeal, "except in instances where circumstances of an extraordinary character have intervened since conviction, which makes it obviously proper."

In this case, as seen, there was no adversary showing attempted by the respondent before the trial judge. In the pro-

ceeding here, as has been shown, there is such an attempt, but, as we shall endeavor to show, the effect of the showing so attempted is not to raise a conflict in the proofs upon the vital question of fact involved herein. In other words, we are not of the opinion that the affidavits filed herein in opposition to those filed by the petitioner in any measure impeach or detract from the force of the showing made by the petitioner in the court below. The important question, then, to which we are required to address ourselves is whether or not the action of the trial judge, in declining to make an order admitting the petitioner to bail pending the determination of his cause on appeal, involved an abuse of discretion, or (in other language), whether the proofs adduced before us without conflict disclose that this is a case where circumstances of an extraordinary character have intervened since conviction, which makes an order admitting the petitioner to bail obviously proper, and that, therefore, the judge of the court below should have exercised his discretion favorably to the application of the petitioner for bail.

In determining this application, we have the right to consider the nature and characteristics of the malady from which the petitioner is shown to be a chronic sufferer. According to Dr. Spratling, a noted and accepted authority on epilepsy, that malady is defined as follows: "A disease or disorder affecting the brain, characterized by recurrent paroxysms which are abrupt in appearance, variable in duration but generally short, and in which there is impairment or loss of consciousness, together with impairment of motor co-ordination, with or without convulsions." The same author tells us that there is a variety of forms of epilepsy, the more prominent and serious of which are the *grand mal* and the *petit mal* types. The petitioner's malady, as will be recalled, has been diagnosed as of the *grand mal* or severer form of the disease. In the attacks of this form of the disease, which are always sudden and unexpected, so far as is concerned the particular time at which the seizures may occur, the body of the victim becomes rigid, his eyes are set and characterized by a stare, his face takes on a deadly pallor, his hands alternately clutch and open, his body jerks, trembles, and twitches convulsively, he has frothings at the mouth and he loses consciousness. When under such an attack, if then standing, his body will naturally and of course lurch and fall to the

floor. If lying down when the attack is on, it is not impossible and often happens, from the convulsive movements of tne body, that the patient will fall from the couch or bed upon which he is lying.

Epilepsy is not wholly an incurable malady, and while there is, of course, always danger of a sudden fatal termination of the disease through a single, brief attack, there is still the added danger of death following from a single attack, not from the attack itself, but, when alone or unattended by anyone, from a serious injury suffered by the victim from falling and striking some hard substance, as, for instance, sustaining in the fall a fractured skull; or, if unattended by someone capable of affording him immediate assistance, he might die from suffocation.

Thus it will be perceived that, while it may be very true, as the doctors giving testimony here for the respondent declare, that the petitioner is not in imminent danger of death from the disease itself, the important fact nevertheless stands out that, the petitioner having suffered several attacks since his incarceration, there is a strong probability of a recurrence of them and that, when having such an attack, in the absence of an attendant able to give him proper or the necessary protection and attention, he is in great danger of falling and thus striking the floor or some other solid substance with a very serious, if not fatal, result, or being unattended and without proper and timely assistance, he might, in one of those paroxysms, die from suffocation. (Spratling on Epilepsy, p. 304.) Thus the necessity of constant special care and attention at the hands of someone capable of administering such care and attention is plainly manifest. That he cannot receive such care and attention under the unfortunate circumstances by which he is now beset, is obvious, and it necessarily follows that he is at all times under imminent danger of receiving injuries from which his death might ensue.

Neither the fact that a brother of the petitioner has been permitted to remain with him during the night-time of each day, nor the fact that a deputy sheriff occupies quarters in the jail within twenty feet of the cell occupied by the petitioner, where he (the deputy) can readily and distinctly hear the noise or commotion usually accompanying or resulting from the attacks from which the petitioner suffers, relieves the situation or answers the proposition that the life of the

petitioner is in jeopardy and will so remain so long as the petitioner is circumstanced as he now is. The ministrations of the brother of the petitioner are, of course, prompted by considerations of brotherly sympathy and affection, but they are purely voluntary and his presence in jail a matter of license or privilege. Neither he nor any other person should be required to undergo self-imposed imprisonment, however laudable may be the purpose or the motive of such a sacrifice. The law does not contemplate or require it. As to the fact that a deputy sheriff occupies quarters in close proximity to the petitioner's cell and thus is enabled to hear any noise proceeding from said cell, the obvious reply is that the very "noise" or "commotion" which the officer declares would readily attract his attention might be the effect of the very thing to be guarded against—injury to the petitioner from a fall while under the influence of an epileptic attack.

Under the peculiar circumstances of this case, we are convinced that the petitioner, suffering as he was and is from the most serious form of a disease which is dangerous to life not alone in and of itself, but also because of the external consequences of the malady, should at all times be attended by some person competent to protect and assist him when, by reason of the recurrent violent manifestations of the disease, he is wholly powerless to protect or assist himself, and, moreover, should be afforded a better opportunity than his present circumstances will permit to receive special treatment at the hands of a specialist in diseases of the character of that with which he is afflicted.

We are, therefore, constrained to the conclusion that the circumstances of this case, as developed by the record in the proceeding for bail before the court below, are of such a character as to have called for the exercise of the discretion vested in the trial court or judge in such matters favorably to the application for bail, and that the learned trial judge in a legal view abused that discretion by refusing to make the order. And, since, as we have above pointed out, the showing before us is, substantially, the same as that made before the trial judge, notwithstanding the purported adversary showing herein by the respondent, which showing was not made before the trial judge, there is nothing herein to preclude us from resting our decision upon the determination of the question whether the trial judge did so abuse his discretion.

In accordance with the foregoing views, it is ordered that the petitioner be and he is hereby admitted to bail pending the determination of his appeal from the judgment of his conviction of the crime of embezzlement, upon giving an undertaking as required by law in such cases in the sum of ten thousand ($10,000) dollars, said undertaking to be approved by the judge of the superior court of the county of Madera.

Chipman, P. J., concurred.